## HODGES v. THE STATE.

1. It is competent for the clerk of a Circuit Court to issue a writ of error to remove to this Court, a cause in which a final judgment has been rendered upon a forfeited recognizance, or for a fine or penalty, without a previous order for that purpose.

2. Wherever a person charged with a criminal offence, is put upon his trial, he is, by operation of law, committed to the custody of the sheriff, without either a general or special order for that purpose.

3. The act of 1812, merely furnishes a remedy, by which a fine assessed against a party committed to custody, may be recovered of the sheriff, &c., or their sureties, in case of escape; but in addition to this proceeding, the party guilty of a breach of official duty, might be indicted, if the facts of

the case were such as constituted an offence at common law: consequently, the provisions of the Penal Code, which provide for the punishment of escapes, are merely substitutes for the common law, and do not abrogate the act of 1812.

4. The act of 1815, requires the county treaserer to proceed against delinquent sheriffs, &c., for the recovery of fines, &c.; consequently it is not competent for the Court in which the judgment was rendered, to institute the proceeding against the sheriff, *mero motu.*

Writ of Error to the Circuit Court of Barbour.

Pulaski Mann and Leroy Gunter, were charged in three several indictments, with assaults and batteries ; on all of which they were found guilty, by the verdicts of juries. In the first case, the parties were fined eighty-five dollars each; in the second, eighteen dollars each; and in the third, twenty dollars each. Judgments were accordingly rendered against each of the defendants for the fines and cost.

It is shown by the record, by a recital of the fact, that Mann and Gunter were committed to the custody of the plaintiff in error, who was the sheriff of Barbour, and that he has omitted to retain them in custody, but suffered them to escape. Thereupon it is ordered, that rules be issued returnable to the next term, requiring the sheriff to show cause why he should not be attached for contempt in the premises. A citation was accordingly issued, executed and returned. The case thus made coming on for trial, an entry was made, reciting, that the defendant showed for cause, that said escapes were involuntary, and moreover, that there was no order of record, committing said Mann and Gunter, nor either of them, to his (defendant, Hodge's,) custody ; and so it appears from an inspection of the record of the said convictions of the said Mann and Gunter, at the last term ; nor is there any general order of that term, that prisoners convicted at that term, be in custody till fine and costs are paid, shown to the Court, as being upon the record of proceedings of said term. *And further*, the said Hodges showed for cause, that after the adjournment of said last term, he took the said Gunter, but finding no order of record for his detention, he released him. And now it is considered by the Court, that said showing is insufficient, and that the State of Alabama recover from the said Hodges, the sum of $259 13, for the balance of fines and costs upon said convic-

tions, of said Mann and Gunter, for which execution may issue."

BUFORD, for the plaintiff in error, insisted that the rights of Courts to punish for contempt, was restricted to cases of misbehavior in the presence of the Court, or for disobedience of any party, juror, witness, or officer, to some process, rule or order of such Court. [Clay's Dig. 151, § 5.]

The record shows, that there was no order for the convicts' detention; and if there had been, the remedy is by indictment, and on conviction a fine, from two hundred to one thousand dollars. [Clay's Dig. 429, § 13.]

ATTORNEY GENERAL, for the State, moved to dismiss the writ of error because it was issued by the clerk of the Circuit Court, when the statute requires an order from this Court, or one of its Judges in vacation. [Bourne v. The State, 8 Porter's Rep. 458.]

If his motion was overruled, he insisted that the proceeding against the sheriff was authorized by the statute. [Clay's Dig. 247, §§ 4, 10.] The provision on which the plaintiff in error relies, does not repeal the previous act, but is merely cumulative. [Clay's Dig. 429, §§ 12, 13.]

The record need not have shown, that Mann, and Gunter, were committed to the sheriff by express order. It is no objection to the proceeding, that the sheriff was required to answer for a contempt ; such a requisition was proper.

COLLIER, C. J.—It has been always considered, that the general law, which authorizes a clerk of the Circuit Court to issue a writ of error, to remove to this Court, a cause in which a final judgment, &c., has been rendered, embraces a case like the present. Judgments on forfeited recognizances, or fines or penalties, imposed without a previous indictment, or the verdict of a jury, have been thus revised. The provision of the Penal Code applies to judgments rendered on indictments, and does not require an application to this Court for a writ of error, where the proceeding is by motion. [Clay's Dig. 470, § 2.]

It is provided by the act of 1812, among other things, that if any person shall be committed to the custody of any sheriff, or other officer, by any of the Courts of this State, until the fine, for-

8

feiture or amercement, for which he was committed, shall be paid, who shall suffer him to escape, &c.; then "it shall be lawful for the Comptroller of Public Accounts, upon motion in the Circuit Court, to demand judgment against such sheriff or other officer, or their securities, for the fines, forfeitures, or amercements, mentioned in such writ, or for so much as shall be returned levied, or for the amount for which the defendant, or defendants, shall have been committed;" and such Court is authorized to give judgment accordingly, and award execution thereon. *Provided*, ten days previous notice of the motion be given. [Clay's Dig. 247, § 4.]

By the act of 1815, it is enacted that all fines and forfeitures shall thereafter be paid into the county treasury, and not into the State treasury, &c.; and the county treasurer is hereby required to proceed immediately, against any officer who shall fail to comply with the provisions of this section. [Clay's Dig. 249, § 10.]

The twelfth and thirteenth sections of the fifth chapter of the Penal Code provide, that if any sheriff, &c., having the legal custody of any person, charged with, or convicted of a criminal offence, shall voluntarily suffer, or permit, the person so charged or convicted, to escape, he shall, on conviction, be punished by imprisonment in the penitentiary, &c. And if, through negligence, he shall suffer any prisoner in his custody, upon a conviction, or upon any criminal charge, to escape, he shall, on conviction, be fined, not less than two hundred and not exceeding one thousand dollars. [Clay's Dig. 429.]

Whenever a person charged with a criminal offence is put upon his trial, he is by operation of law, committed to the custody of the sheriff, and there is no necessity for either a general or special order, mandatory to that officer. From that moment the accused is in legal custody, and the sheriff, as the executive officer, is charged with his safekeeping.

The act of 1812, merely furnishes a remedy by which the fine, &c., with which the party committed was charged, may be recovered of the sheriff, or other officer, or their sureties, in case of his escape. Its effect is to impose on them a liability *in numero*, where an escape has been suffered. But the party guilty of a breach of official duty, was still subject to an indictment, if the facts were such as to constitute an offence. So the officer

might have been twice charged, once on motion under the statute, to recover the fine, and again on indictment. This being the law, the provisions of the Penal Code prescribing the punishment for a voluntary and a negligent escape, are merely substitutes for the common law, and do not repeal or abrogate the act of 1812.

The act of 1815, directs, that " all fines and forfeitures shall thereafter be paid into the county treasury," and requires the county treasurer to proceed against delinquent officers, as it was previously the duty of the Comptroller of Public Accounts to do. The proceeding in the present case indicates that the Court *mero motu*, or, perhaps, at the instance of the solicitor, was the *actor*. This is an irregularity which we think fatal to the judgment; the motion should have been made on behalf of the county treasurer, and he should appear as the party seeking the judgment of the Court. For this defect, the judgment of the Circuit Court is reversed, and the cause remanded.